UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS REIDY

Plaintiff,

v.

CENTRAL PUGET SOUND TRANSIT REGIONAL AUTHORITY *dba* SOUND TRANSIT,

Defendant.

NO. C13-536RSL

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on defendant's motion for summary judgment. Dkt. # 31. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

## I. BACKGROUND

Defendant Central Puget Sound Transit Regional Authority, *dba* Sound Transit is a special-purpose metropolitan municipal corporation responsible for constructing and operating high-capacity public transportation systems in a "district" spanning three contiguous counties in Washington state. Decl. of James Niemer ("Niemer Decl.") ¶ 3 (Dkt. # 31-1). Four local transit agencies operate within defendant's district and coordinate public transportation services with defendant, including Pierce Transit ("Pierce"). Id. ¶ 5. Under a Joint Operating Agreement with defendant, Pierce operates a bus service in South King and Pierce Counties; defendant provides

Pierce with buses. Id. ¶ 6; Niemer Decl. Exh. A at 1, 16 (Dkt. # 31-2). One of the bus models defendant and Pierce use is the MCI coach, which seats 57 passengers and is designed to be wheelchair-accessible. Decl. of David Turissini ¶¶ 5-6 (Dkt. # 31-4); Decl. of Michael Miller ¶¶ 7-8 (Dkt. # 31-6). There are 486 Pierce drivers who know how to operate MCI coaches. Turissini Decl. ¶ 7. On the bus route at issue in this case, the total ridership for the year 2010 was 396,920 passengers (including weekdays and weekends); for the year 2013, it was 703,499 (including weekdays and weekends). Miller Decl. ¶ 13.

Plaintiff is a quadriplegic male who was injured in a swimming pool accident in 1998. Dep. of Thomas Reidy ("Reidy Dep.") 24:11-12 (Dkt. # 33-15 – Dkt. # 33-20). Due to his disability, he uses a remote-controlled wheelchair with a joystick. Id. 37:7-18. In April 2009, defendant received an email from plaintiff indicating concern about the MCI coach's capability to load a wheelchair. Miller Decl. ¶ 16. This inquiry was handled by Michael Miller, defendant's Customer Facilities and Accessible Services Manager and also defendant's Americans with Disabilities Act ("ADA") Compliance Officer. Id. ¶¶ 2, 16. The record suggests that Miller was plaintiff's point of contact with defendant. In October 2010, plaintiff sent defendant an email (answered by Miller) complaining about wheelchair access on the MCI coach. Miller Decl. Exh. F (Dkt. # 33-4). Defendant indicated that he had experienced problems with MCI coaches "about 10 different times." Id. Miller forwarded plaintiff's email to Pierce. Miller Decl. ¶ 21; Miller Decl. Exh. F. In late-October, plaintiff, at Pierce's invitation, visited Pierce's facilities to demonstrate the problem that he was having with boarding the MCI coach and his proposed solution. Decl. of Thomas Reidy ¶ 6 (Dkt. # 35).

Plaintiff cannot board the MCI coach in the normal fashion. The MCI coach boards wheelchairs in the middle of the bus using a lift. Miller Decl. ¶¶ 7-8. To make room to secure wheelchairs once they are boarded, certain chairs near the wheelchair entrance must be moved forward and placed in a "locked" position. Id. To allow plaintiff's wheelchair to board the bus, the seats must be pushed past the locked position, or else the joystick on the chair will not allow

plaintiff to pass. Reidy Decl. ¶¶ 5-6. While some coach drivers have moved the seats in the manner necessary to allow plaintiff to board, others have not. Id.

During his October 2010 meeting with Pierce, plaintiff demonstrated his wheelchair-boarding method of moving seats past the locked position. Pierce personnel initially reacted positively, and reported to Miller that they would adopt the loading method and train their personnel, accordingly. Miller Decl. Exh. H (Dkt. # 33-6).

Defendant received subsequent complaints from plaintiff (handled by Miller) indicating that MCI bus drivers were not using plaintiff's boarding method. Miller Decl. Exh. J, K, L (Dkt. ## 33-11 – 33-13). On May 2, 2011, Miller was sent a memo from a Pierce employee indicating that Pierce safety personnel had expressed concerns the prior November that plaintiff's boarding method would put bus operators in an ergonomically incorrect position and thereby cause them injuries. Miller Decl. Exh. L. Miller also received an email that day from another Pierce employee indicating that seats being in an unlocked position was a "known cause of injury for Transit Operators." Miller Decl. Exh. K. Miller claims that Pierce's Safety and Training Board concluded that plaintiff's loading method would leave seats in an "unlocked and unsafe position" that violated the manufacturers' safety specifications. Miller Decl. ¶ 29.

Plaintiff has not read or reviewed any manuals or materials produced by the MCI coach's manufacturer on the lift and securement systems installed on MCI coaches, nor has he been trained in using the coach's wheelchair-securement equipment. Reidy Dep. 38:14-25; 44:6-17; 53:19-25; 54:1-4. To date, only one other person has complained about wheelchair accessibility on MCI coaches. Miller Decl. ¶ 18.

In early 2012, plaintiff filed a complaint with the Federal Transit Administration ("FTA") Office of Civil Rights. Niemer Decl. ¶ 7. Investigating plaintiff's allegations of disability discrimination, the FTA concluded that defendant had not violated the ADA, the Rehabilitation Act or the Department of Transportation's ("DOT") implementing regulations. Niemer Decl. Exh. B. The FTA further explained that MCI coaches met regulatory requirements regarding the

necessary dimensions of the wheelchair securement area and the provision of adequate clearance to reach the securement area, and held that bus operators were not compelled to push seats past the locked position to allow plaintiff to board. Id.

Plaintiff brings this action alleging intentional discrimination in violation of the ADA, 42 U.S.C. § 12132, et seq. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Dkt. # 14. Plaintiff claims that he was denied the benefits of a public entity's program by defendant's failure to train MCI coach operators in how to board his wheelchair. Dkt. # 14 at 5-6; Dkt. # 34 at 2. The Complaint alludes to certain incidents and makes allegations suggesting a broader theory of discrimination (most of which are unsupported by evidence), as does plaintiff's deposition testimony, Dkt. # 14 at 3; Reidy Dep. 68:2-8; however, plaintiff's opposition brief and declaration make clear that this is plaintiff's sole theory, Dkt. # 34 at 2-3; Reidy Decl. ¶ 10.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the movant shows that "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position" is not sufficient; the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp.

Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).

**B. ADA and Rehabilitation Act**

There is no significant difference in the analysis of rights and obligations created by Title II of the ADA and Section 504 of the Rehabilitation Act, and they may be interpreted and applied together. E.g., McGary v. City of Portland, 386 F.3d 1259, 1265 n. 7 (9th Cir. 2004); Duvall v. County of Kitsap, 260 F.3d 1124, 1136. (9th Cir. 2001). To prove that a public entity violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. Duvall, 260 F.3d at 1135. A plaintiff bringing suit under Section 504 of the Rehabilitation Act must show that (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. Id. Also relevant to this litigation, 49 C.F.R. § 37.173 (implementing the ADA) requires that entities such as defendant ensure that "personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely[.]"

Both Acts oblige public entities regulated by the Department of Justice ("DOJ") to provide reasonable accommodations for the disabled. DOJ regulations implementing Title II of the ADA require public entities to make "reasonable modifications" to practices when necessary to "avoid discrimination" on the basis of disabilities, unless an entity can demonstrate that these modifications would fundamentally alter the nature of the "service, program or activity" at issue. 28 C.F.R. § 35.130(b)(7). It is likewise a violation of § 504 for a public entity to "den[y] a

qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services." Mark. H. v. Hamamoto, 620 F.3d 1090, 1097 (9th Cir. 2010).

In this Circuit, an entity's duty upon being alerted of a need to accommodate a disabled person is to conduct a fact-specific investigation to determine what accommodations are reasonable, gathering sufficient information from the disabled individual and qualified experts to make this determination; mere speculation that an accommodation is not feasible does not suffice. Duvall, 260 F.3d at 1139. In a public entity case arising under the Acts, once a plaintiff makes a preliminary showing that a reasonable accommodation was possible, Vinson v. Thomas, 288 F.3d 1145, 1154 (9th Cir. 2002), the burden shifts to the defendant to show that the requested accommodation would require a fundamental alteration or would be unduly burdensome for defendant, Pierce v. County of Orange, 526 F.3d 1190, 1217 (9th Cir. 2008). Cf. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 391 (2002) (in employment discrimination context, plaintiff need only show "that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases."). The ultimate question of whether a given accommodation is reasonable is generally a question of fact. See Kral v. King Cnty., 2012 WL 726901, at * 14 (W.D. Wash. Mar. 6, 2012).

To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant. Duvall, 260 F.3d at 1138. The Ninth Circuit applies the "deliberate indifference" standard to find intent; this standard requires that defendant both (a) know that harm to a federally protected right is substantially likely and (b) fail to act upon that likelihood. Id. at 1138-39. In an accommodation case, this standard is satisfied when a public entity has notice that an accommodation is required and fails to act on its duty to investigate; however, to be deliberately indifferent, the entity's failure to act must be "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. ("Because in some instances events may be

attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction . . . deliberate indifference does not occur where a duty to act may simply have been overlooked[.]"). Thus, a public entity may be found liable for damages under Title II or Section 504 for "intentional discrimination" if it intentionally or with deliberate indifference fails to provide a reasonable accommodation to disabled persons. See Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008) (making this the rule under Section 504).

**C. Applicable Framework**

Plaintiff's theory is that defendant intentionally discriminated against him by failing to train MCI coach drivers in how to board his wheelchair in the manner that plaintiff specified, after being shown how to do so. Dkt. # 34 at 2-3; Reidy Decl. ¶ 10. The Ninth Circuit has not set out a standard for "failure-to-train" claims under the ADA. See Green v. Tri-Cnty. Metro. Transp. Dist. of Oregon, 909 F. Supp. 2d 1211, 1220 (D. Or. 2012) aff'd sub nom. Green v. Tri-Cnty. Metro. Transp. Dist. of Oregon, 583 F. App'x 832 (9th Cir. 2014) (analogizing the claim in that case to one brought under 42 U.S.C. § 1983). The Court finds the proper construction of plaintiff's claim to be that defendant failed to accommodate plaintiff's disability. See Vinson v. Thomas, 288 F.3d 1145, 1154 (noting that failure to provide reasonable accommodations can constitute discrimination under the Rehabilitation Act); Memmer v. Marin County Courts, 169 F.3d 630, 633 (9th Cir. 1999) (same for the ADA). Defendant has similarly construed plaintiff's claim, conceding that it is required under Title II to provide "*reasonable* accommodations to persons with disabilities to avoid discrimination," Dkt. # 31 at 17 (emphasis in original), and raising defenses applicable to reasonable accommodation claims, Dkt. # 31 at 19-22.

**III. DISCUSSION**

It is undisputed that defendant is subject to both the ADA and the RA, that plaintiff is disabled, and that, to prevail on his claims under the Acts, plaintiff must prove that defendant excluded him from its services. Dkt. # 31 at 17; Dkt. # 36 (Def. Reply) at 4. Defendant argues that plaintiff cannot satisfy his burden of proving that he was actually discriminated-against or

excluded from service within the meaning of the Acts, Dkt. # 31 at 18; or that his alleged exclusion was solely on the basis of his disability, Dkt. # 36 at 3. Defendant also argues that it is entitled to summary judgment because accommodating plaintiff would have been unsafe (and thereby would have "fundamentally" changed the nature of its operations) and would have produced undue administrative and financial burdens. Dkt. # 31 at 19-22.

**A. Denial of Benefits**

Defendant argues that plaintiff was not excluded from or denied the benefits of defendant's services. Dkt. # 31 at 18. The record indicates that plaintiff frequently rides the bus and does not have a problem with any of defendant's models other than the MCI coach. Reidy Dep. 39:15-20; Reidy Decl. ¶ 2. The record is unclear at best about how frequently plaintiff encounters difficulty on MCI coaches. In an October 2010 email to Miller, plaintiff stated that he had encountered problems on 10 occasions, Miller Decl. Exh. F. During his 2014 deposition, he stated that he had encountered some problem on a coach 60%-75% of the time (including non-boarding problems), Reidy Dep. 50:19-25; 51:1-12; that he rode these buses approximately 6 times a year, id. 50:5-7; and that he had been riding coaches for 7-8 years, id. 71:11-14. The Amended Complaint states that plaintiff had encountered problems on these buses for 5 years, although pleadings do not constitute evidence. Dkt. # 14 at 2. Plaintiff's declaration and opposition brief are silent on how frequently the problem at issue has arisen. Also considering plaintiff's emails to Miller, the record as a whole indicates that plaintiff was excluded from defendant's service between 13-32 times over the past 7-8 years. Plaintiff is able to board an MCI coach when the driver assents to his boarding method. Reidy Decl. ¶ 5.

Defendant suggests that the rarity of the above inconvenience, which is resolved when plaintiff successfully boards another bus, indicates that plaintiff still has "meaningful access" to defendants' transportation services, which is all that the Acts require. See Mark H., 513 F.3d at 937 (9th Cir. 2008); Weinreich v. Los Angeles Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997). There is general support for the proposition that the Acts were not meant to

perfectly remedy every inconvenience suffered by the disabled. The Supreme Court has held that while the Rehabilitation Act gives the disabled the ability to benefit from programs receiving federal assistance, "The Act does not . . . guarantee the handicapped equal results." Alexander v. Choate, 469 U.S. 287, 301 (1985); see also Van Velzor v. City of Burleson, 2013 WL 3579339, at *7 (N.D. Tex. July 12, 2013) (holding that the ADA and Rehabilitation Act "do not go so far as to provide a cause of action for every instance in which an individual finds the services provided by a public entity to be dissatisfactory."); Fink v. New York City Dept. of Personnel, 53 F.3d 565, 567 (2d Cir. 1995) ("[Section 504] does not require the perfect elimination of all disadvantage that may flow from [a] disability[.]").

This proposition finds more direct support in precedent from this Circuit suggesting that ADA plaintiffs who suffer only occasional injuries may not seek injunctive relief. To receive an injunction, a plaintiff must show that he faces a real or immediate threat of substantial or irreparable injury. Midgett v. Tri-Cnty. Metro. Transp. Dist. of Oregon, 254 F.3d 846, 850 (9th Cir. 2001). When a plaintiff seeks to enjoin a public entity, his burden is heightened, pursuant to the well-established rule that "the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." Id. (citation omitted). In Midgett, the Ninth Circuit affirmed the denial of an injunction against a local transit agency on the grounds that the plaintiff's series of "frustrating, but isolated" experiences with malfunctioning lifts on buses and hostile bus operators could not without more establish a violation of the ADA. Id. at 849 ("The regulations implementing the ADA do not contemplate perfect service for wheelchair-using bus commuters."). The court emphasized that plaintiff's evidence did not support the inference that he faced a real and immediate threat of future ADA violations, and that the FTA had recently found that defendant was substantially ADA-compliant.

Nevertheless, the Court finds defendant's argument unavailing and Midgett distinguishable. Whereas the occasional harms in Midgett were in theory in the process of being remedied, repetition of the harms described by plaintiff here is inevitable so long as he uses

defendant's bus service (which the record suggests is necessary), especially given that the FTA has given defendant permission to continue to not accommodate him. Miller Decl. Exh. B. As a matter of law, the Court cannot find that plaintiff has sufficient access to defendant's services where, on random occasion, he will inevitably be left without public transport. The expected persistence of this problem satisfies the exclusion element of plaintiff's discrimination claim, and its relative infrequency does not preclude equitable relief.

**B. Role of Disability in Plaintiff's Exclusion**

Plaintiff's confinement to a wheelchair and the fact that defendant's bus operators will not accommodate him is the factor preventing him from riding MCI coach buses, and thus the question presented is whether plaintiff's proposed accommodation was reasonable, and if so, whether plaintiff can show that defendant acted with deliberate indifference in refusing to accommodate him.

**C. Reasonableness of Accommodation**

Plaintiff meets his initial burden of showing that his accommodation was facially reasonable: defendant's drivers have on a number of occasions used his boarding method without injury, and Pierce's initial reaction to it during plaintiff's demonstration was favorable. Dkt. # 35 ¶¶ 5-6. Defendant's rebuttal evidence, while strong, is not sufficiently overwhelming for it to prevail on summary judgment.

**1. Fundamental Alteration**

Defendant's argument that using plaintiff's method would require a "fundamental change" in its operations rests heavily on the proposition that the method is unsafe. Dkt. # 31 at 20. In support of this proposition, defendant relies heavily on the email and memorandum that Michael Miller received in May 2011, which conveyed fears from Pierce employees (including safety personnel) that the method was dangerous. Miller Decl. Exh. L, K. However, neither the email nor the memorandum was conclusive, as the memorandum suggested the matter was still under investigation and the email suggested that a workaround was being explored. Id.

Miller's declaration states that the Pierce Transit Safety and Training Board found plaintiff's boarding method to be unsafe and violative of the manufacturers' safety specifications. Miller Decl. ¶ 29. However, Miller later goes too far in stating that Pierce had "determined" that plaintiff's boarding method was dangerous. Miller Decl. ¶ 35. Read in context and construed in plaintiff's favor it is an open question whether Miller's statements about the Training Board's conclusion reflects a misinterpretation of what he was told. More importantly, Miller's recitation of the Board's finding is hearsay, and thus cannot be considered for the truth of the fact asserted (that plaintiff's method was dangerous) on summary judgment. Quanta Indem. Co. v. Amberwood Dev. Inc., 2014 WL 1246144, at *3 (Dist. Az. Mar. 26, 2014) (movants' summary judgment affidavits must not contain hearsay); see also Orr v. Bank of Am., NT & SA, 285 F.3d 764, 778-79 (hearsay inadmissible on summary judgment).

Defendant's reply brief offers the declaration of Michelle Swope, who supervised Pierce's Bus Safety and Training Program in 2010. Swope states that following plaintiff's demonstration, Pierce's safety and training instructors concluded that plaintiff's method was unsafe. Decl. of Michelle Swope ¶¶ 5-6 (Dkt. # 36-1). This evidence is also hearsay.[1]

Despite plaintiff's lack of technical knowledge and the weight of defendant's remaining evidence, it is not certain that a trier of fact would be compelled to find for defendant that plaintiff's method is unsafe on this evidence alone. The trier of fact will consider more specific and detailed evidence from Pierce's safety experts explaining how they reached their conclusion, where they also can be cross-examined by plaintiff's counsel.

**2. Undue Burden**

Defendant argues that retraining current bus operators in how to employ plaintiff's method (which would only benefit two people according to the record) would have constituted

[1] Defendant also cites the FTA's letter in support of its argument; however, while the FTA made legal findings that plaintiff's accommodation was not necessary, it did not make any explicit statement about the dangerousness of plaintiff's boarding method, and thus is of limited assistance to this Court in reaching its own conclusion about the merits of this case.

an undue administrative and financial burden, citing calculations that doing so would cost approx. $54,432. Dkt. # 31 at 21; Turrissini Decl. Exh. C (Dkt. # 31-3). Plaintiff presents no evidence in rebuttal. However, defendant's argument (on which it bears the burden) is undercut by defendant's own exhibits, which suggest that Pierce had planned to issue a memo explaining how to implement plaintiff's method and only actually "train" new operators in its use, which in theory would cost considerably less than defendant estimates. Miller Decl. Exh. H at 1. In general, the "undue hardship" inquiry requires a holistic assessment that requires looking at the cost of an accommodation relative to defendant's overall budget, which the Court cannot assess here, among other factors. Hayden v. Redwoods Cmty. Coll. Dist., 2007 WL 61886, at *10 (N.D. Cal. Jan. 8, 2007). This may be a triable question as well, but only if plaintiff prevails on the fundamental alteration issue.

**D. Deliberate Indifference**

The "deliberate indifference" inquiry here turns on how defendant responded to plaintiff's request for accommodation. Duvall, 260 F.3d at 1138. Defendant's evidence is sufficiently compelling for it to prevail on this issue on summary judgment.

Michael Miller forwarded the second email complaint that defendant received from plaintiff to Pierce, which invited plaintiff to demonstrate his boarding method for Pierce personnel later that same month. Miller Decl. ¶ 19; Miller Decl. Exh. G; Reidy Decl. ¶ 6. Pierce personnel contemplated the feasibility of the boarding method, and at some point concluded that it was unsafe after consulting its safety and training personnel. Reidy Decl. ¶ 6; Miller Decl. Exh. H, L, K; Swope Decl. ¶¶ 5-6. It is not clear when this conclusion became final, and the evidence arguably suggests that this occurred eight months or longer after plaintiff's October 2010 demonstration. Miller Decl. Exh. L, K. In response to two additional complaints from plaintiff following his demonstration, Miller reached out to Pierce to secure plaintiff personalized assistance. Miller Decl. Exh. J, K.

It remains possible that, for some time, defendant refused to accommodate plaintiff based

on inconclusive findings from an incomplete investigation. Nevertheless, considering all of the evidence in the light most favoring plaintiff, the Court finds that no reasonable juror could conclude that defendant was "deliberately indifferent" to plaintiff's concerns. The evidence shows that defendant promptly responded to plaintiff's initial complaints and investigated whether an accommodation could be made, and relied on the appropriate parties to determine whether accommodating plaintiff would be reasonable. See Held v. Northshore Sch. Dist., 2014 WL 6451297, at *11 (W.D. Wash. Nov. 17, 2014) (deliberate indifference not shown where claims of discrimination had been thoroughly investigated and dismissed). To the extent that defendant failed to promptly follow-up on its investigation, the evidence suggests that this at most amounted to "negligent bureaucratic slippage," which does not rise to the level of deliberate indifference. Fleming v. Brown, 2012 WL 851109, at *6 (N.D. Cal. Mar. 13, 2012) (citing Duvall, 260 F.3d at 1139-40). Plaintiff cannot prove intentional discrimination, and thus cannot pursue monetary damages.

**E. Entitlement to Compensatory and Injunctive Relief**

The Court already has denied plaintiff's request for monetary damages. Now the Court turns to the issue of whether plaintiff may request injunctive relief.

To seek injunctive relief, a plaintiff must demonstrate a likelihood of substantial and immediate irreparable injury. In evaluating this likelihood, courts look to factors such as the plaintiff's patronage of defendant's business, his geographical proxmity to this business and the definitiveness of his plans to return to this business. E.g., Molski v. Mandarin Touch Restaurant, 385 F. Supp. 2d 1042, 1044 (C.D. Cal. 2005). The record here indicates that plaintiff cannot easily and consistently ride MCI coaches and that he needs to use the routes on which they travel, and the emotional distress to which plaintiff has testified suffices for injunctive relief to be sought. Exh. N 133:22-25; 134:1-11. See Chalk v. U.S. Dist. Court Cent. Dist. of Cal., 840 F.2d 701, 710 (9th Cir. 1988) (noting that such noncompensable injuries were contemplated by Congress in enacting Section 504).

**F. Entitlement to Trial**

A plaintiff bringing Title II and Section 504 claims is entitled to a jury trial when he requests "legal" relief within the contemplation of the Seventh Amendment; i.e., when he seeks monetary damages on the grounds that he endured intentional discrimination. E.g., Vazquez v. Municipality of Juncos, 756 F. Supp. 2d 154, 167-68 (D.P.R. 2010); Matthews v. Jefferson, 29 F. Supp. 2d 525, 536-37 (W.D. Ark. 1998). However, precedent indicates that such plaintiffs cannot demand a jury trial when they seek purely equitable relief. In Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1269-70 (9th Cir. 2009) (ruling on a retaliation claim brought under Title I of the ADA), the Ninth Circuit held that plaintiff was not entitled to a jury trial because his claim was redressable only by equitable relief. In support of this ruling, the court quoted a copyright case for the proposition that "no right to a jury exists" for equitable claims under the Seventh Amendment. Id. at 1270 (quoting Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001)). The same ruling would apply to this case.

Additionally, other courts (in cases not involving the ADA or Rehabilitation Act) have indicated that a plaintiff's request for attorney's fees and costs cannot entitle him to a jury trial where the primary relief he seeks is equitable. See Northgate Homes, Inc. v. City of Dayton, 126 F.3d 1095, 1099 (8th Cir. 1997); Starbucks Corp. v. Lundberg, 2005 WL 6036699, at *5 (D. Or. May 25, 2005).

Therefore, the Court finds that plaintiff is not entitled to a jury trial. Rather, there will be a trial to the Court where the Court will first consider the parties' evidence on the first defense to plaintiff's accommodation claim - fundamental alteration. If plaintiff prevails on that issue, the Court will then consider the second defense - undue burden.

## IV. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment. Plaintiff's bench trial for injunctive relief is hereby scheduled for January 13, 2015 at 9:00 am.

DATED this 22nd day of December, 2014.

Robert S. Lasnik
United States District Judge